■ MADISON AVENUE CAVIARTERIA, Appellant, v HARTFORD STEAM BOILER INSPECTION & INSURANCE COMPANY et al., Respondents, et al., Defendant. [770 NYS2d 724]—

Motion by the respondent Emerson Electric Company/White-Rogers Division for leave to reargue an appeal from an order of the Supreme Court, Kings County, dated May 31, 2001, which was determined by decision and order of this Court dated June 9, 2003 (306 AD2d 324).

Upon the papers filed in support of the motion and no papers having been filed in opposition thereto, it is

Ordered that the motion is granted; and it is further,

Ordered that, upon reargument, the decision and order of this Court dated June 9, 2003, in the above-entitled appeal, is recalled and vacated, and the following decision and order is substituted therefor:

In an action, inter alia, to recover damages for breach of contract and negligence, the plaintiff appeals, as limited by its brief, from so much of an order of the Supreme Court, Kings

County (Mason, J.), dated May 31, 2001, as granted those branches of the separate motions of the defendants Hartford Steam Boiler Inspection & Insurance Company, Emerson Electric Company/White-Rodgers Division, ABCO Refrigeration Supply Corp., Justin Time Refrigeration, Inc., and Miljoco Corporation which were to dismiss the complaint insofar as asserted against them based upon the plaintiff's spoliation of evidence, and as failed to decide those branches of its cross motion which were (1) for summary judgment on the issue of liability against the defendant Hartford Steam Boiler Inspection & Insurance Company, (2) for leave to renew the prior motion of the defendant Emerson Electric Company/White-Rogers Division, which was to dismiss the complaint as against it, which was determined by order of the same court dated March 30, 2000, and (3) to preclude the defendants from offering evidence at trial pursuant to CPLR 3042.

Ordered that the appeal from so much of the order as failed to decide those branches of the plaintiff's cross motion which were (1) for summary judgment on the issue of liability against the defendant Hartford Steam Boiler Inspection & Insurance Company, (2) for leave to renew the prior motion of the defendant Emerson Electric Company/White-Rogers Division, and (3) to preclude the defendants from offering evidence at trial, are dismissed as those branches of the plaintiff's cross motion remain pending and undecided (see Katz v Katz, 68 AD2d 536 [1979]); and it further,

Ordered that the order is reversed insofar as appealed from and reviewed, on the law, those branches of the motions which were to dismiss the complaint based upon the plaintiff's spoliation of evidence are denied, the complaint is reinstated insofar as asserted against the defendants ABCO Refrigeration Supply Corp., Justin Time Refrigeration, Inc., Hartford Steam Boiler Inspection & Insurance Company, and Miljoco Corporation, and all pending cross claims and any third-party actions are reinstated as against the defendant Emerson Electric Company/White-Rogers Division; and it is further,

Ordered that one bill of costs is awarded to the plaintiff, payable by the respondents appearing separately and filing separate briefs.

The plaintiff is a retailer of caviar and other specialty foods. On July 24, 1997, it was discovered that approximately 4,400 pounds of caviar had spoiled in one of its walk-in refrigerator-freezer units (hereinafter the unit). That same day, Eric Sobol, a principal of the plaintiff, contacted the defendant Justin Time Refrigeration, Inc. (hereinafter Justin Time), the company

responsible for service and repair of the unit, and the defendant Hartford Steam Boiler Inspection & Insurance Company (hereinafter Hartford), the plaintiff's insurer. According to Sobol, inspection and testing performed that day by Justin Time revealed that the temperature inside the unit was 38 degrees, although the internal thermostat was set to maintain the temperature between 26 and 28 degrees, and an external thermometer provided a false reading of 26 degrees. In an attempt to compensate, the thermostat was reset to maintain a lower temperature, but was raised again the following day after caviar was observed to be freezing.

On July 30, 1997, a claims examiner for Hartford inspected the unit in the presence of representatives of the plaintiff and Justin Time, and a claims adjuster hired by the plaintiff. On July 31, 1997, Hartford asserted that its investigation did not reveal an insured event under the policy issued to the plaintiff. On August 11, 1997, the plaintiff informed Hartford that it believed that the thermostat had failed, thereby causing the caviar inside the unit to spoil. On August 14, 1997, an independent laboratory hired by Hartford performed tests on the unit and prepared a report. By letter dated September 18, 1997, counsel for the plaintiff notified the defendant Emerson Electric Company/White-Rodgers Division (hereinafter Emerson), the manufacturer of the thermostat, of the loss. Counsel stated that the plaintiff considered Emerson a potential defendant in any future litigation and invited Emerson to participate in the inspection and testing of the thermostat. On November 5, 1997, Kevin Kyle, a representative of Emerson, examined the unit and conducted tests. Also present were representatives of the plaintiff, Hartford, and Justin Time, and a representative from an outside laboratory hired by Hartford. Kyle concluded that the thermostat was operating within an acceptable range. The thermostat was not removed from the unit. That same day, a service person from Justin Time handed Sobol a thermostat. Sobol, led to believe that the thermostat was the one at issue, marked the thermostat "Caviarteria Broken Thermostat 97 Loss."

On September 11, 1998, the plaintiff commenced this action, inter alia, to recover damages for breach of contract and negligence. The plaintiff alleged that the thermostat malfunctioned, as it did not maintain the temperature in the unit at the required level to maintain the plaintiff's product, and that it was unaware of the malfunction because the external thermometer also malfunctioned. In addition to naming Hartford, Justin Time, and Emerson as defendants, the plaintiff named TMP

Acquisitions Co., Inc. (hereinafter TMP), the manufacturer of the unit, ABCO Refrigeration Supply Corp. (hereinafter ABCO), the wholesaler of the unit, and Miljoco Corporation (hereinafter Miljoco), the alleged supplier or manufacturer of the external thermometer. We note that Emerson's motion to dismiss the complaint insofar as asserted against it was granted by order dated March 30, 2000, although Emerson remained subject to certain cross claims and third-party actions.

On April 16, 2000, after issue was joined as to all parties, the plaintiff, pursuant to a disclosure order, produced the thermostat it received on November 5, 1997, for testing by an independent laboratory. Through no fault of the plaintiff, testing did not occur at that time. Prior to any additional testing, it was determined that the thermostat produced by the plaintiff was in fact manufactured after the date of the loss and was not the thermostat at issue. Each defendant sought dismissal of the complaint insofar as asserted against it based on the plaintiff's failure to preserve the thermostat, asserting that additional testing was necessary to establish defenses and/or counterclaims. In opposition, Sobol asserted that the thermostat at issue was still in the unit and in use. Sobol stated that the confusion arose because he had been led to believe that the thermostat handed to him on November 5, 1997, which he had preserved during the pendency of the litigation, was the thermostat at issue. In further support of their respective motions, the defendants Hartford, Justin Time, Emerson, ABCO, and Miljoco argued that dismissal of the complaint was nonetheless warranted because the continued use of the thermostat constituted spoliation. The Supreme Court granted the motions based on spoliation. We reverse.

"[W]here a party destroys essential physical evidence and the party seeking that physical evidence is 'prejudicially bereft of appropriate means to confront a claim with incisive evidence,' the spoliator may be sanctioned by the striking of its pleading" (*Foncette v LA Express*, 295 AD2d 471, 472 [2002], quoting *New York Cent. Mut. Fire Ins. Co. v Turnerson's Elec.*, 280 AD2d 652, 653 [2001]; *see also Mann Ins. Co. v E.T. Appliances*, 290 AD2d 418, 419 [2002]). Spoliation sanctions are not limited to cases where the evidence was destroyed willfully or in bad faith, "since a party's negligent loss of evidence can be just as fatal to [an]other party's ability to present [a case or] a defense" (*DiDomenico v C & S Aeromatik Supplies*, 252 AD2d 41, 53 [1998] [internal quotation marks omitted]; *see Squitieri v City of New York*, 248 AD2d 201, 203 [1998]; *see also Favish v Tepler*, 294 AD2d 396 [2002]). Thus, while courts are reluctant to dismiss a

pleading absent willful or contumacious conduct, it may be warranted as a "matter of elementary fairness" (*Puccia v Farley*, 261 AD2d 83, 85 [1999]). Here, the thermostat was not destroyed, and no defendant otherwise demonstrated that the continued use of the thermostat resulted in an alteration or change to the thermostat such that it may no longer be subjected to relevant and necessary inspections and testing. The sole affidavit from an expert regarding this issue was merely conclusory. Further, the defendants Hartford, Justin Time, and Emerson either inspected and performed certain tests on the thermostat near the time of the loss, or had representatives present at such inspections and testing (*see e.g. Favish v Tepler*, *supra*; *Chiu Ping Chung v Caravan Coach Co.*, 285 AD2d 621 [2001]; *Roman v North Shore Orthopedic Assn.*, 271 AD2d 669 [2000]). Accordingly, the Supreme Court improperly granted those branches of the motions which were to dismiss the complaint based upon spoliation. Ritter, J.P., McGinity, Townes and Mastro, JJ., concur.